

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

October 18, 2021

**BY ECF**
The Honorable Philip M. Halpern
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:    *United States v. Dion Joyce*, S1 21 Cr. 337 (PMH)

Dear Judge Halpern:

      The Government respectfully submits this letter in advance of the sentencing of the defendant, Dion Joyce, scheduled for October 25, 2021.  As described below, the Government respectfully submits that a sentence within the parties' stipulated Sentencing Guidelines range of 6 to 12 months' imprisonment would be sufficient, but not greater than necessary to reflect the seriousness of the defendant's conduct, to promote respect for the law, and to ensure adequate general and specific deterrence.[1]

**A.**      **Background**

      In October 2019, the defendant, Dion Joyce, participated in a conspiracy to transport stolen goods across state lines, in violation of Title 18, United States Code, Section 2314.  Specifically, the defendant and his co-conspirators, including co-defendant Arthur Reynolds, traveled from New Jersey to New York in the middle of the night on numerous occasions and burglarized numerous businesses, most of which were chain stores of a donut company (the "Chain Donut Company").  PSR ¶ 12.  As described below, Joyce played a critical role in the conspiracy, as he was one of the individuals who broke into the businesses, pried open the cash registers, stole thousands of dollars from the businesses, and then transported the stolen money back to New Jersey.  *Id.*

---

[1] As described below, United States Probation Office ("Probation") calculates a Sentencing Guidelines range of 10 to 16 months' imprisonment, whereas the parties' plea agreement stipulated a Sentencing Guidelines range of 6 to 12 months' imprisonment.  The difference between the two calculations is described below and arises from two criminal convictions that did not appear in the defendant's RAP sheet and were thus not known to the Government at the time of the plea agreement.  While the Government acknowledges that Probation's calculation of the Guidelines range is correct, the Government stands by its stipulated Guidelines range of 6 to 12 months' imprisonment in recommending a sentence within the range of 6 to 12 months' imprisonment.

The actions of the defendant and his co-conspirators were calculated and planned out well in advance. Conspirators rented cars for the specific purpose of committing the burglaries and the conspirators arranged for getaway drivers to drive them to and from the target locations. PSR ¶ 11. Coconspirators also conducted significant research ahead of time to identify their target locations, which were predominately businesses that were part of the Chain Donut Company. *Id*. When the coconspirators reached a location, they scoped out the area to make sure that the location was sufficiently discreet —*i.e.* that there were not cars driving around and that the area was not particularly well-lit, which could cause them to be detected. *Id*. They also communicated with another coconspirator who remained in New Jersey and helped them identify alternate locations if one of their targets appeared too risky or was otherwise unsuccessful. *Id*.

Joyce and his coconspirator, Arthur Reynolds, played the crucial and most culpable role of actually breaking into the businesses and stealing the money. Joyce and Reynolds took steps to hide their identity, wearing dark-colored clothing, hoods, and masks. PSR ¶ 13. Joyce and Reynolds arrived at each burglary with numerous tools, including Sawzalls with blades, crowbars, prybars, pliers, screwdrivers and a griding wheel. *Id*. They used the tools to pop locks off the doors, which allowed them to break in more discretely, and used crowbars to pry open the cash registers, and Sawzalls to break into ATMs or safes. *Id*. Joyce typically was responsible for breaking into the businesses' cash registers and stealing the money from the registers, while Reynolds broke into the businesses' back offices. If the business had an ATM or safe, Joyce would also help Reynolds try to break into the ATM or safe. As reflected in the surveillance footage from the burglaries, Joyce and Reynolds were experienced burglars who were adept at using their tools to successfully break into the locations, and once inside, move quickly to open cash registers and safes and escape before being detected.

In the one-month time period in which the defendant participated in the conspiracy, he drove from New Jersey to New York to participate in the burglaries on at least five occasions. PSR ¶ 11. Each time the coconspirators went out to commit burglaries they generally targeted three to four stores that were part of the Chain Donut Company. *Id*. The conspirators were not always successful at each location and, as described above, in some instances the conspirators decided that the location was too risky. However, the defendant successfully broke into and burglarized seven locations, stealing approximately $27,458. PSR ¶ 17.

On December 1, 2019, Reynolds and Joyce were caught in the act of burglarizing a business in Vorhees, New Jersey.[2] PSR ¶ 14. In addition to possessing numerous burglary tools, Joyce was found with a list of addresses that corresponded to businesses, many of which were part of the Chain Donut Company. *Id*.

Dion Joyce and Arthur Reynolds were charged by complaint on January 26, 2021 with one count of conspiracy to commit interstate transportation of stolen property, in violation of Title 18, United States Code, Section 371, and one count of interstate transportation of substantive property, in violation of Title 18, United States Code, Section 2314. (Doc. 2). On June 15, 2021, a superseding Information (the "Information") was filed, charging Joyce with one count of

---

[2] This burglary is not part of the charged conduct in this case as it took place in New Jersey and did not involve the transportation of stolen goods across state lines.

conspiracy to commit interstate transportation of stolen goods. (Doc. 39). On June 22, 2021, Joyce appeared before Your Honor and plead guilty to the Information pursuant to a plea agreement. Charges against Joyce's co-defendant Reynolds are still pending.

B.      The Plea Agreement and the Applicable Guidelines Range

The plea agreement between the defendant and the Government sets forth the parties' understanding of the appropriate sentencing Guidelines range of 6 to 12 months' imprisonment. As noted above and further described below, Probation calculates a Guidelines range of 10 to 16 months' imprisonment because Probation identified two criminal convictions that were not known to the Government at the time it entered into the plea agreement with the defendant. Thus, while the Government acknowledges that Probation's calculation of the sentencing Guidelines range is correct, the Government stands by its stipulated Guidelines range of 6 to 12 months' imprisonment for purposes of its request for a sentence within the Guidelines range.

The plea agreement stipulates that the guidelines provision applicable to this offense is United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1. The base offense level is 6 because the offense charged in the Information has a statutory maximum term of imprisonment of less than 20 years. U.S.S.G. § 2B1.1(a)(2). Because the aggregate loss of $27,458 exceeds $15,000, a four-level enhancement is added pursuant to U.S.S.G. § 2B1.1(b)(1)(C). Because the defendant accepted responsibility and entered a timely guilty plea, a two-level reduction applies, pursuant to U.S.S.G. § 3E1.1(a). Accordingly, the base offense level is 8. *See also* PSR ¶¶ 4(a-e) and 23-31.

The defendant has an extensive criminal history, with 18 prior convictions. Accordingly, the Government first sets forth the convictions that result in criminal history points and thereafter briefly summarizes the many other convictions that do not result in criminal history points given the age of the convictions.

On June 15, 2005, the defendant was arrested and charged with burglary in Atlantic County Superior Court, Mays Landing New Jersey, after the defendant broke into a victim's home that same day and caused damage to the victim's property. *See* PSR ¶ 44. The defendant was convicted on January 12, 2006 and on April 28, 2006, sentenced to 4 years' imprisonment. Pursuant to U.S.S.G. §§ 4A.1.(a) and 4A1.2(e)(1), this conviction results in three criminal history points.

On October 4, 2015, the defendant was arrested and charged with burglary in Atlantic County Superior Court, Mays Landing, New Jersey, after the defendant broke into a business September 23, 2015 and October 3, 2015, and stole more than $200. *See* PSR ¶ 48. The defendant was convicted and on August 21, 2017 sentenced to 5 years' probation and required to complete drug court. Pursuant to U.S.S.G. §§ 4A.1.(c) and 4A1.2(e)(2), this conviction results in one criminal history point.

Because the defendant committed the instant offense while under a criminal justice sentence, namely while on probation in connection with the above-described burglary, the defendant receives an additional two criminal history points pursuant to U.S.S.G. § 4A1.1(d).

As noted in the PSR, the below two convictions did not appear in the defendant's RAP sheet and thus were not incorporated into the Guidelines range calculated in the parties' plea agreement. Accordingly, the parties' plea agreement calculated six criminal history points and a Criminal History Category of III.

On November 24, 2015, the defendant was arrested and charged with burglary in Atlantic County Superior Court, Mays Landing, New Jersey, after burglarizing a business, stealing more than $200, causing damage of over $500 to three businesses, and resisting arrest. *See* PSR ¶ 49. The defendant was convicted and on August 21, 2017 sentenced to 5 years' probation and required to complete drug court. Pursuant to U.S.S.G. §§ 4A.1.(c) and 4A1.2(e)(2), this conviction results in one criminal history point.

On June 14, 2016, the defendant was arrested and charged with obstructing the administration of law in Atlantic County Superior Court, Mays Landing, New Jersey when he used "flight, intimidation, force, violence or physical interference," in preventing law enforcement from performing functions in regards to investigating the prosecution of a person for a crime. PSR ¶ 50. The defendant was convicted and on August 21, 2017 was sentenced to 5 years' probation and required to complete drug court.

As correctly calculated in the PSR, the total number of criminal history points is eight and thus the defendant is in criminal history category IV. With an offense level of 8, the PSR correctly calculates a sentencing Guidelines range of 10 to 16 months' imprisonment.

<u>Other Burglary or Larceny-Related Convictions</u>

As described below, the defendant has 6 prior convictions for burglary and burglary-related offenses that do not result in additional criminal history points due to the age of the convictions.

On April 10, 1992, the defendant was convicted of burglary for breaking into a business, and was sentenced to 364 days' imprisonment and two years' probation. PSR ¶ 37.

On October 5, 1992, the defendant was convicted of larceny and on June 24, 1993, sentenced to a $50 fine. PSR ¶ 38.

On June 24, 1993, the defendant was convicted of failure to make lawful disposition of property for breaking into and stealing more than $500 from a fast-food chain restaurant. PSR ¶ 39. The defendant was sentenced to 3 years' imprisonment.

On June 6, 1997, the defendant was convicted of two counts of burglary when the defendant and another individual broke into a business on November 6, 1995, and stole money and property. The defendant was sentenced to 4 years' imprisonment on each count, to run consecutive to each other. PSR ¶ 40.

On June 6, 1996, the defendant was convicted of 12 counts of burglary and sentenced to a total of 10 years' imprisonment. PSR ¶ 41.

On July 13, 2002, the defendant was convicted of two counts of burglary for breaking into several businesses on July 10, 2001 and stealing money and property. PSR ¶ 43. The defendant was sentenced to 4 years' imprisonment on each count to run concurrently.

Drug-Related Convictions – As described below, the defendant has 3 prior narcotics-related convictions, which do not result in additional criminal history points due to the age of the convictions.

On January 5, 1987, the defendant was convicted of possessing heroin on October 5, 1986, and sentenced to 2 days' confinement and 1 year probation. PSR ¶ 33.

On January 5, 1987, the defendant was convicted of possessing with intent to distribute heroin on November 22, 1986, and was sentenced to 120 days' imprisonment and 1 year probation. PSR ¶ 34. On October 2, 1987, the defendant violated his probation and was resented to 3 years' imprisonment.

On October 2, 1987, the defendant was convicted of possessing cocaine with intent to distribute and sentenced to 3 years' imprisonment. PSR ¶ 36.

Other – As further described in the PSR, the defendant has four other convictions that do not result in additional criminal history points. In particular, on October 2, 1987, the defendant was convicted of receiving a stolen vehicle and sentenced to 30 days' imprisonment. PSR ¶ 35. In addition, the defendant has three prior convictions, which involved driving without a driver's license (PSR ¶ 45), driving while his driver's license was suspended (PSR ¶ 46), and failing to have motor vehicle registration or insurance and driving without a driver's license (PSR ¶ 47).

C. **Discussion**

    1. **Applicable Law**

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

    2. **A Guidelines Sentence Is Appropriate in This Case**

The Government respectfully submits that a sentence within the parties' stipulated Guidelines range of 6 to 12 months' imprisonment would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing. In particular, the nature and

circumstances of the offense, the need to promote respect for the law, and the need to assure both general and specific deterrence, all justify such a sentence.

With respect to the nature and circumstances of the offense, as described above, the defendant played an integral role in repeatedly burglarizing numerous businesses. The defendant was one of the individuals to break into the businesses, pry open the businesses' cash registers, and steal thousands of dollars. As set forth above, the actions of the defendant and his coconspirators were well thought out and planned. The coconspirators carefully selected their targeted businesses, Joyce and Reynolds dressed in dark-colored clothing, hoods, and masks and came equipped with numerous burglary tools. The seriousness of the offense is underscored by the fact that this was not just a one-time mistake. Rather, the defendant engaged in this conduct repeatedly within a one-month period. In fact, had the defendant not been caught while burglarizing a business, there is every reason to believe that he would have continued participating in the conspiracy.

In addition to the circumstances of the offense, one of the most significant factors supporting a sentence within the stipulated Guidelines range is the fact that the defendant committed the instant offense despite having an extensive criminal history, with most prior convictions involving the exact same type of conduct at issue here. Indeed, the defendant's criminal history demonstrates that the defendant has spent much of his adult life committing burglaries. Combined with the defendant's limited employment history, it appears that the defendant has spent most of his adult life supporting himself through burglaries rather than through legitimate forms of employment. Specifically, the defendant has nine different convictions for burglary or burglary-related offenses. In several instances, he has been sentenced to multiple years of imprisonment for committing one or two burglaries. In one conviction, which involved 12 counts of burglary, he received a sentence of 10 years' imprisonment. None of these convictions or sentences of imprisonment were sufficient to deter the defendant from returning to the exact same conduct. Indeed, the defendant engaged in the instant offense while on probation for a burglary-related conviction.

Given the defendant's egregious criminal history and the brazen way in which time and again he has returned to the same type of criminal conduct, the need for specific deterrence cannot be overstated. Moreover, as described above, many of the defendants' criminal convictions, including six of the convictions for burglary or burglary-related crimes, do not result in any criminal history points and are thus not accounted for in the defendant's criminal history category.

The defendant's repeated conduct in connection with the instant offense and his substantial criminal history plainly demonstrates that the defendant has no respect for the law, and a sentence within the stipulated Guidelines range is therefore appropriate to promote respect for the law. A Guidelines sentence is also appropriate to deter others from engaging in similar conduct. In particular, a guidelines sentence would appropriately send the message that individuals who engage in similar conduct will face a sentence of imprisonment.

### 3. Defense Counsel's Submission

Defense counsel asks the court to sentence the defendant to time served. In support, defense counsel acknowledges that the defendant's crime was serious, but argues that it was an economic crime, as the businesses were closed at the time of the burglary. First, this fact is appropriately taken into account in the calculation of the defendant's sentencing Guidelines. Indeed, had the defendant robbed individuals and/or threatened individuals with weapons, he would have been charged with a different crime or crimes and faced a more substantial guidelines range. Second, the defendant's conduct was not without risk to public safety. While the defendant and his coconspirators attempted to break into the businesses when no one was present, the donut stores they targeted often received deliveries around the time that the defendant and his coconspirators were breaking into the businesses. Thus, there was certainly a risk that individuals could have been present at the time of the burglary, or arrived while the burglary was in progress. In addition, there was also a risk that someone could have seen the burglary in progress and sought to intervene, which could have led to violence.

Defense counsel also cites the defendant's difficult upbringing, including that the defendant was raised by his grandma because his mother was addicted to crack cocaine and his father was in the military. The defendant was also sexually abused by a cousin when he was seven or eight years old and some members of his family did not support him when he came forward with this information. The Government recognizes that the defendant had a challenging upbringing and that the defendant's background is one of the factors the Court should consider in imposing a sentence of imprisonment. However, the Government respectfully submits that in light of the other factors described above, the defendant's childhood does not support imposing a below-Guidelines sentence. In particular, at 54 years old, the defendant is an adult who must take responsibility for the choices he makes and seek out treatment for any ongoing issues he may have.

Defense counsel also argues for a time-served sentence based on the fact that the defendant has been a drug addict for most of his adult life – according to the PSR, using about 10 to 15 bags of heroin a day since he was 28 years old (PSR ¶¶ 82-83) – but is now committed to sobriety and has demonstrated significant progress. The Government recognizes and commends the defendant for the steps he has taken recently to address his drug addiction. According to the PSR, he is drug tested weekly and has not had recent positive tests, and attends drug treatment as directed. While the Government certainly hopes that the defendant will remain committed to his sobriety, the Government respectfully submits that this does not support a sentence of time-served. The defendant has spent most of his adult life addicted to heroin and burglarizing businesses to support himself and his drug addiction. Prior to his arrest in connection with the instant offense, the defendant has done little to be a contributing member of society and none of his prior 18 convictions, including drug-related convictions and numerous other burglary-related convictions, caused him to make any change in his life. According to the PSR, the defendant made little to no attempt to address his drug addiction prior to 2020, and several of his initial attempts were unsuccessful. In fact, while the defendant has participated in Drug Court for the past six and a half years, according to the PSR, he continued using heroin until January 2021. The Government recognizes that the path from addiction to sobriety frequently involves relapses and is encouraged by the progress the defendant has demonstrated recently. While the Court should consider this progress, the Government respectfully submits that a Guidelines sentences remains appropriate

due to the other sentencing factors, including the seriousness of the offense and the defendants' extensive criminal history.

Finally, defense counsel notes that the defendant has asthma and diabetes, which place him at greater risk of suffering complications from COVID-19 and that his risk of exposure is greater in prison. However, the defendant is vaccinated and thus his risks from contracting COVID-19 are substantially reduced. In addition, the Bureau of Prisons has instituted numerous policies and procedures to reduce the risk of spreading COVID-19. Accordingly, the Government submits that the defendant's concerns about COVID-19 do not support a below-Guidelines sentence.

**D.      Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the parties' stipulated Guidelines range of 6 to 12 months' imprisonment.

Respectfully Submitted,

DAMIAN WILLIAMS
United States Attorney

by:   /s/ Courtney Heavey
Courtney L. Heavey
Assistant United States Attorney
(914) 993-1927